Sixth Division
November 21, 2008

No. 1-07-2589

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) | Appeal from the Circuit Court of Cook County |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ENTERPRISE LEASING COMPANY OF CHICAGO, d/b/a Enterprise Rent-A-Car, | ) ) | 06 CH 1871 |
| | ) | |
| Defendant-Appellant | ) | |
| | ) | |
| (Lesean Doby, Constance Taylor and David Bartholomew, | ) ) | Honorable Mary Anne Mason, |
| Defendants). | ) | Judge Presiding. |

JUSTICE McBRIDE delivered the opinion of the court:

Plaintiff, State Farm Mutual Automobile Insurance Company (State Farm), filed a declaratory judgment action seeking a determination that it had no duty to defend or indemnify defendant Constance Taylor or defendant Lesean Doby in an underlying action filed against them by defendant Enterprise Leasing Company of Chicago, d/b/a Enterprise Rent-A-Car (Enterprise). The underlying action arose out of Taylor's and Doby's alleged failure to make payments to Enterprise for collision damage to a vehicle that Taylor rented from Enterprise and Doby was driving at the time of an accident. The trial court granted State Farm's motion for summary judgment and found no duty to defend Taylor or Doby in the underlying action.

Enterprise appeals, arguing that the trial court erred in finding that State Farm had no duty to defend Taylor or Doby because provisions in the policy mandate coverage, and State Farm should be barred under the doctrine of estoppel from denying liability and physical damages

coverage to Taylor and Doby for breaching its duty to defend.

The record discloses the following facts. On September 8, 2003, Constance Taylor rented a 2003 Land Rover Discovery from Enterprise. The rental agreement offered, for an additional fee, an optional collision damage waiver (CDW). The CDW covered the renter's "financial responsibility for damage to the rental vehicle." The rental agreement advised the renter "to carefully consider whether to sign [the waiver declining CDW] if you have rental vehicle collision coverage provided by your credit card or collision insurance on your own vehicle. Before deciding to purchase the [CDW], you may wish to determine whether your own vehicle insurance affords you coverage for damage to the rental vehicle and the amount of the deductible under your own insurance coverage." The rental agreement provided that the CDW may be voided for several reasons, including "[d]amage or loss occurring while the rental vehicle is operated by a driver not permitted under the rental agreement." The rental agreement indicated that Taylor opted to add the CDW coverage. The rental agreement also had a section in which the renter could include an "additional authorized driver." However, Taylor did not list another driver and the agreement provided that no other drivers were permitted "without owner's approval." The agreement also showed that the rental vehicle was not permitted to leave Illinois.

At the time of the rental, Taylor held an automobile insurance policy with State Farm. The vehicle covered on the policy was a 1998 Chevrolet Cavalier. No additional insureds or insured vehicles were listed on the policy.

Despite the aforementioned provisions in the rental agreement, on September 10, 2003, Lesean Doby was driving the rented Discovery in Michigan when an accident occurred on

Interstate 94 East. According to an accident report, the driver swerved to avoid a deer and lost control of the car, causing it to roll over and land in a ditch. The estimated damage to the Discovery was $35,434.44, and the vehicle was valued at $27,700. Taylor's CDW was voided under the rental agreement because the accident occurred when Doby was driving the Discovery. Enterprise made payment demands of Taylor and Doby for $28,430, equal to the value of the vehicle at the time of the accident plus towing costs.

In October 2003, Enterprise contacted State Farm advising it that Taylor had voided the CDW and was responsible for all damages from the claim. In January 2004, State Farm sent Taylor a letter denying coverage because Taylor was not driving or occupying the rental car at the time of the accident.

In October 2004, Enterprise filed its complaint in the underlying litigation based on the damage sustained by the Discovery in the September 2003 accident. Count I was against Taylor for breach of contract, count II was against Doby for negligence and property damage, and count III was against Doby for conversion. Both Taylor and Doby failed to appear in the action and default orders were entered against them. In October 2005, Enterprise wrote to State Farm to advise it of Taylor's default and to demand that it defend her in the action.

In January 2006, State Farm appeared in the underlying action to represent Taylor and sent a letter advising Enterprise that it reserved its right to deny coverage. Shortly thereafter, State Farm filed its complaint in the instant declaratory judgment action seeking a determination that it owed no coverage to Taylor or Doby. Enterprise filed a counterclaim asking for a declaration that coverage existed under the State Farm policy.

1-07-2589

State Farm filed a motion for summary judgment and argued that there was no coverage for the underlying action because Taylor was not using the vehicle at the time of the accident and Doby did not meet the liability coverage section's definition of an "insured." Further, there was no coverage for damages to the vehicle under the physical damages coverage because Doby also does not meet that section's definition of an "insured." In response, Enterprise asserted that the omnibus clause applied because Doby drove the vehicle with Taylor's permission. Enterprise also contended that State Farm waived its right to deny coverage because it failed to timely defend Taylor and Doby in the underlying action. In July 2007, the trial court granted State Farm's motion for summary judgment.

This appeal followed.

"The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment." Crum & Forster Managers Corp. v. Resolution Trust Corp., 156 Ill. 2d 384, 391 (1993). Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2004). We review cases involving summary judgment *de novo*. Ragan v. Columbia Mutual Insurance Co., 183 Ill. 2d 342, 349 (1998).

Our primary objective in construing the policy language is to ascertain and give effect to the intentions of the parties as expressed by the words of the contract. Central Illinois Light Co.

4

v. Home Insurance Co., 213 Ill. 2d 141, 153 (2004). An insurance contract is to be construed as a whole, giving effect to every provision because it must be assumed that every provision was intended to serve a purpose. Central Illinois Light Co., 213 Ill. 2d 153. "If the words used in the policy are clear and unambiguous, they must be given their plain, ordinary, and popular meaning." Central Illinois Light Co., 213 Ill. 2d at 153. "A contract term is ambiguous if it can reasonably be interpreted in more than one way due to the indefiniteness of the language or due to it having a double or multiple meaning." William Blair & Co. v. FI Liquidation Corp., 358 Ill. App. 3d 324, 334 (2005). "A contract is not ambiguous, however, if a court can ascertain its meaning from the general contract language." William Blair, 358 Ill. App. 3d at 334. "[T]he mere fact that the parties disagree as to the meaning of a term does not make that term ambiguous." William Blair, 358 Ill. App. 3d at 334.

On appeal, Enterprise argues that the trial court erred in granting State Farm's motion for summary judgment because State Farm had a duty to provide coverage under the omnibus clause of its policy, and State Farm should be estopped from denying coverage for failure to defend Taylor and Doby under a reservation of rights. "A provision in an automobile insurance policy extending liability coverage to persons who use the named insured's vehicle with his or her permission is commonly referred to as an omnibus clause." State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group, 182 Ill. 2d 240, 243-44 (1998).

Specifically, Enterprise focuses its argument on the "omnibus" provision in the State Farm policy and relies on the provisions of the Illinois Safety and Family Financial Responsibility Law (Financial Responsibility Law) (625 ILCS 5/7-100 *et seq.* (West 2002)) as

1-07-2589

the basis for its argument that State Farm is required to provide coverage for the damage to the Discovery.

Section 7-601(a) of the Financial Responsibility Law provides:

> "No person shall operate, register or maintain registration of, and no owner shall permit another person to operate, register or maintain registration of, a motor vehicle designed to be used on a public highway unless the motor vehicle is covered by a liability insurance policy." 625 ILCS 5/7-601(a) (West 2002).

For most vehicles, section 7-203 requires that the policy limits must be at least $20,000 per person or $40,000 per accident for personal injury or death and at least $15,000 for property damage. 625 ILCS 5/7-601(a), 7-203 (West 2000).

Section 7-317(b) lists the requirements of an owner's policy, including the omnibus clause.

> "(b) **Owner's Policy.**--Such owner's policy of liability insurance:
>
> 1. Shall designate by explicit description or by appropriate reference, all motor vehicles with respect to which coverage is thereby intended to be granted;
>
> 2. Shall insure the person named therein and any other person using or responsible for the use of such motor vehicle or vehicles with the express or implied permission of the insured;

6

3. Shall insure every named insured and any other person using or responsible for the use of any motor vehicle owned by the named insured and used by such other person with the express or implied permission of the named insured on account of the maintenance, use or operation of any motor vehicle owned by the named insured, within the continental limits of the United States or the Dominion of Canada against loss from liability imposed by law arising from such maintenance, use or operation, to the extent and aggregate amount, exclusive of interest and cost, with respect to each motor vehicle, of $20,000 for bodily injury to or death of one person as a result of any one accident and, subject to such limit as to one person, the amount of $40,000 for bodily injury to or death of all persons as a result of any one accident and the amount of $15,000 for damage to property of others as a result of any one accident." (Emphasis in original.) 625 ILCS 5/7-317(b) (West 2002).

"Provisions such as this, which extend liability coverage to persons who use the named insured's vehicle with his or her permission, are commonly referred to as 'omnibus clauses.' Where, as in Illinois, an omnibus clause is required by statute to be included in motor vehicle liability policies, our court has held that such a clause must be read into every such policy." Progressive Universal Insurance Co. v. Liberty Mutual Fire Insurance Co., 215 Ill. 2d 121,

128-29 (2005), citing Universal Underwriters, 182 Ill. 2d at 243-44. "The principal purpose of this state's mandatory liability insurance requirement is to protect the public by securing payment of their damages." Progressive, 215 Ill. 2d at 129.

In Universal Underwriters, Rodney Luckhart took a test-drive in a vehicle owned by Joyce Pontiac GMC, Jeep-Eagle and Toyota (Joyce Pontiac). While on the test-drive, Luckhart negligently collided with another vehicle, causing injuries to the occupants. State Farm, as Luckhart's insurer, settled the claims of the injured occupants and then sought recovery from Universal Underwriters Group (Universal), the insurer for Joyce Pontiac. Universal denied the claim, asserting that the policy issued to Joyce Pontiac afforded no coverage to Luckhart. On cross-motions for summary judgment, the trial court held in favor of State Farm. Universal Underwriters, 182 Ill. 2d at 241-42.

On appeal to the supreme court, Universal argued that Luckhart was not required to be covered by the dealer's policy. The supreme court disagreed and found that a car dealer's liability policy must provide coverage for test-drivers. The court discussed the mandatory insurance requirements in Illinois and pointed out that the omnibus clause "applies to the mandatory insurance requirement set forth in section 7-601(a)." Universal Underwriters, 182 Ill. 2d at 245. Universal contended that Joyce Pontiac was exempt from the mandatory insurance requirements under section 7-601(a) because it qualified for "a statutory exemption for 'vehicles complying with laws which require them to be insured in amounts meeting or exceeding the minimum amounts required under [section 7-601].' 625 ILCS 5/7-601(b)(6) (West 1996)." Universal, 182 Ill. 2d at 245. Joyce Pontiac was required to carry liability coverage of at least

$100,000/$300,000/$50,000, exceeding the required minimum amounts under section 7-203. However, the supreme court concluded that the "the exemption which Universal cites applies only when the insurance required by law provides the type of coverage required under the mandatory insurance statute. Hence, the insurance must contain an omnibus clause insuring those driving a vehicle with the owner's permission. Thus, regardless of whether the exemption applies, the garage policy must still cover Luckhart's liability." Universal Underwriters, 182 Ill. 2d at 245-46.

Here, Enterprise is asking this court to extend the omnibus clause to include a rental vehicle in addition to the named insured's owned vehicles. Enterprise points to the phrase "using or responsible for the use of" that is used in section 7-317(b) and argues that the legislature intended this phrase to encompass rental vehicles. However, Enterprise ignores the rest of the statute.

"The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature." In re Donald A.G., 221 Ill. 2d 234, 246 (2006). "The best evidence of legislative intent is the language of the statute, and when possible, the court should interpret the language of a statute according to its plain and ordinary meaning." In re Donald A.G., 221 Ill. 2d at 246.

Subsection 7-317(b)(1) requires a description of the covered vehicle, *i.e.*, the owned vehicle (625 ILCS 5/7-317(b)(1) (West 2002)), and subsection 7-317(b)(2) refers to persons "using or responsible for the use of *such* motor vehicle or vehicles" with the owner's permission (emphasis added) (625 ILCS 5/7-317(b)(2) (West 2002)). The word "such" is being used as an

adjective to describe the type of motor vehicle. When read in context with subsection (b)(1), it is clear that this subsection is not referring to all vehicles; rather, it is referencing the vehicle or vehicles intended to be covered, as required in subsection (b)(1). Subsection (b)(3), which Enterprise also cites, clearly states that it applies to "any motor vehicle *owned* by the named insured," and the rental vehicle was not owned by Taylor. (Emphasis added.) 625 ILCS 5/7-317(b)(3) (West 2002).

Section 7-317(b) clearly refers to the named insured's vehicle or vehicle on the policy. If the legislature had intended this section to apply to nonowned rental vehicles, it would not have used language that specifically referred to the owned vehicles on the policy. This language indicates a narrow application of the statute. For this court to agree with Enterprise's interpretation, we would have to ignore the precise language used in the statute. We decline to do so.

Further, certain types of vehicles are exempt from the mandatory insurance requirements of section 7-601(a), and specifically, we find the exception in subsection 7-601(b)(6) to be pertinent to our analysis. See 625 ILCS 5/7-601(b) (West 2002). Though not cited by either party, we find the Fifth District's decision in State Farm Mutual Automobile Insurance Co. v. Hertz Claim Management Corp., 338 Ill. App. 3d 712 (2003), in which the court concluded that rental vehicles fall within the exception under section 7-601(b), to be persuasive. There, State Farm's insured, Michael Kauling, rented a vehicle from ADRI/Auffenberg Ford to drive while his car was being repaired. Kauling declined to purchase a liability insurance supplement at the time of the rental. Later, Kauling was involved in a motor vehicle accident while driving the

rental vehicle insured by the defendants. A subsequent claim was made against the driver for injuries and property damage sustained by the other involved driver. There was a discrepancy in multiple documents as to which insurer was required to provide primary coverage. State Farm filed a declaratory judgment action seeking a determination that the defendants' liability coverage was primary and its was secondary. The trial court granted summary judgment in favor of the defendants. Hertz, 338 Ill. App. 3d at 714-15.

On appeal, State Farm argued that Illinois law required a vehicle owner's insurance to provide primary coverage in all cases, but the defendants contended that this requirement was imposed by the Financial Responsibility Law which is inapplicable to rental vehicles. The reviewing court discussed the mandates under section 7-601(a) of the Financial Responsibility Law and the omnibus provision, but pointed out that "[a]mong the vehicles exempted from the requirements of section 7-601(a) are those in compliance with other statutes that require insurance in amounts meeting or exceeding those required by section 7-601(a). 625 ILCS 5/7-601(b)(6) (West 2000)." Hertz, 338 Ill. App. 3d at 716. The Hertz court noted that the supreme court has held that this exception applies only if the other statute requires the same type of insurance required by section 7-601(a). Hertz, 338 Ill. App. 3d at 716, citing State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group, 182 Ill. 2d 240, 245 (1998). The court then turned to the chapter of the Illinois Vehicle Code dealing with rental vehicles.

Section 9-101 requires all owners of for-rent motor vehicles to provide proof of financial responsibility to the Secretary of State. 625 ILCS 5/9-101 (West 2002). Proof of financial responsibility may come in one of three forms: (1) a bond, (2) an insurance policy, or (3) a

certificate of self-insurance issued by the Director of the Illinois Department of Insurance. 625 ILCS 5/9-102 (West 2002). The bond shall be in the amount of $100,000, and executed by an authorized surety individual or company. 625 ILCS 5/9-103 (West 2002). Section 9-105 sets out the requirements for an insurance policy. Under that section, owners of for-rent vehicles must secure a policy insuring the operator of the rented motor vehicle against liability for bodily injury in the minimum amount of $50,000 per person and $100,000 per occurrence. 625 ILCS 5/9-105 (West 2002). Further, section 9-105 provides that this coverage is applicable to "the customer or against any person operating the motor vehicle with the customer's express or implied consent." 625 ILCS 5/9-105 (West 2002). Any person who violates this chapter of the Illinois Vehicle Code is guilty of a Class A misdemeanor. 625 ILCS 5/9-110 (West 2002).

After considering these provisions, the Hertz court concluded that "[b]ecause the rental car insurance law requires rental cars to be insured in amounts exceeding those required by sections 7-601(a) and 7-203 and contains an omnibus clause identical to that found in section 7-317(b)(2), we find that rental cars fall within the exception provided by section 7-601(b)(6)." Hertz, 338 Ill. App. 3d at 716. The reviewing court went on to find that section 9-105 does not require a car rental agency to provide primary coverage and that a driver and a car rental agency may contractually agree that the driver's policy provides primary coverage. Hertz, 338 Ill. App. 3d at 716-18.

Although this case is not directly on point, it lends support to our conclusion that the legislature did not intend for the Financial Responsibility Law to be applicable to rental vehicles. As we previously discussed, section 7-317(b) was drafted with specific language that refers to

owned vehicles of the named insured that are intended to be covered on the policy. It does not account for nonowned rental vehicles. The legislature designated a separate chapter in the Illinois Vehicle Code for rental vehicles and the required level of insurance, which exceeds that required for individuals. The legislature's choice to treat the owned vehicles separate from rental vehicles shows that it did not intend for the Financial Responsibility Law to be applicable to rental vehicles. For these reasons, Enterprise's argument on appeal fails. The omnibus provisions in State Farm's policy do not apply to the situation present in this case. Therefore, the trial court properly held that the State Farm has no duty to defend or indemnify Taylor or Doby for the damage to the Discovery.

Finally, Enterprise contends that State Farm should be estopped from denying coverage because it did not defend Doby and did not issue a clear reservation of rights as to its defense of Taylor in the underlying litigation.

"The general rule of estoppel provides that an insurer which takes the position that a complaint potentially alleging coverage is not covered under a policy that includes a duty to defend may not simply refuse to defend the insured." Employers Insurance of Wausau v. Ehlco Liquidating Trust, 186 Ill. 2d 127, 150 (1999). "Rather, the insurer has two options: (1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage. If the insurer fails to take either of these steps and is later found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses to coverage." Ehlco, 186 Ill. 2d at 150-51. Here, State Farm did both. It provided a defense of its insured under a reservation of rights and filed the instant declaratory judgment action.

13

1-07-2589

However, even if State Farm's actions were untimely, the estoppel doctrine still does not apply. The estoppel doctrine only applies when an insurer has breached its duty to defend. "Application of the estoppel doctrine is not appropriate if the insurer had no duty to defend, or if the insurer's duty to defend was not properly triggered. These circumstances include where the insurer was given no opportunity to defend; where there was no insurance policy in existence; and where, when the policy and the complaint are compared, there clearly was no coverage or potential for coverage." Ehlco, 186 Ill. 2d at 151.

As we have already concluded that there is no coverage under the State Farm policy, State Farm did not breach its duty to defend Taylor and Doby in the underlying action. The trial court properly rejected Enterprise's estoppel argument.

Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

Affirmed.

O'MALLEY, P.J. and CAHILL, J., concur.

14